## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

James Andrew Grimmer
Secured Party Creditor,
Sui Juris, In Propria Persona,

     Plaintiff,

v.

Citibank, N.A.,

     Defendant.

Case No. 0:25-cv-02758-ECT-DLM

**REPLY MEMORANDUM OF LAW
IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS
WITH PREJUDICE**

**BALLARD SPAHR LLP**

Respectfully submitted,

By: */s/ Kathryn E. Wendt*
Karla M. Vehrs (#0387086)
vehrsk@ballardspahr.com
Kathryn E. Wendt (#0397737)
wendtk@ballardspahr.com
Samantha Pauley (#0505789)
pauleys@ballardspahr.com
    2000 IDS Center 80 South 8th Street
    Minneapolis, MN 55402-2119
    Telephone: 612.371.3211
    Facsimile: 612.371.3207

*Attorneys for Defendant Citibank, N.A.*

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  ARGUMENT ...................................................................................... 1

    A.  Plaintiff's claims fail on the merits. .......................................... 1

        1.  Plaintiff's contract claim under UCC § 3-311 is not viable.............. 1

        2.  Plaintiff's FCRA claim remains meritless ......................... 3

        3.  Plaintiff cannot state a claim under the FDCPA. .............. 4

        4.  TILA and UCC § 9-210 are facially inapplicable. ............ 5

        5.  Plaintiff cannot bring a cause of action under the Tax Code. ........... 6

        6.  Plaintiff did not oppose dismissal of his GLBA claim ..................... 7

    B.  Plaintiff's procedural arguments do not overcome Citibank's motion. ........ 7

        1.  Citibank complied with Local Rule 7.1. .......................... 7

        2.  Citibank complied with Federal Rule of Civil Procedure 5........... 10

        3.  This Court has the inherent power to control its docket. ................ 11

        4.  The Court may consider Plaintiff's exhibits if it so chooses. .......... 12

        5.  Citibank properly responded to Plaintiff's Complaint. .................... 13

    C.  Plaintiff should be sanctioned for his use of false legal citations. .............. 13

    D.  Plaintiff is not entitled to amend his Complaint.......................... 17

III.  CONCLUSION ................................................................................ 19

## I.   <u>INTRODUCTION</u>

Plaintiff's 39-page memorandum in opposition to Citibank's motion to dismiss is riddled with citations to nonexistent cases, false and misleading characterizations of cases, factual and legal inaccuracies, and frivolous arguments. Among these distractions, Plaintiff has still failed to show that his Complaint states any claim upon which relief could be granted. This case should therefore be dismissed in its entirety with prejudice, and Plaintiff should be sanctioned for his bad faith litigation conduct in proffering fictitious and misleading legal authorities to the Court.[1]

## II.   <u>ARGUMENT</u>

### A.   **Plaintiff's claims fail on the merits.**

The Complaint asserts claims for breach of contract and violations of the FCRA, FDCPA, TILA, GLBA, and the Tax Code. All of these claims fail as a matter of law.

#### 1.   **Plaintiff's contract claim under UCC § 3-311 is not viable.**

Plaintiff's entire case hinges on his theory that, under UCC § 3-311 (Accord and Satisfaction by Use of Instrument), he unilaterally created a "contract" with Citibank to eliminate his debt by sending Citibank a "Bill of Exchange," along with a $500 check as a full and final settlement of his outstanding $18,598 debt. (Compl. ¶¶ 5-6). In its opening memorandum, Citibank established that this debt-avoidance scheme is not viable and has been rejected by courts across the country, including this federal District. (Doc. 14 at ECF

---

[1] Unless otherwise stated, capitalized terms in this brief have the same meaning assigned to them in Citibank's opening memorandum. (Doc. 14).

pp. 16-19, citing, *inter alia*, *Wagner v. U.S. Bancorp*, No. 24-cv-1302 (SRN/DTS), 2024 U.S. Dist. LEXIS 181553, at *7 (D. Minn. Oct. 4, 2024)).

In response, Plaintiff has not cited any existing, apposite authority to support his contention that his "Bill of Exchange" and $500 check created a binding, enforceable contract with Citibank to cancel his debt. Instead, Plaintiff attempts to prop up his meritless legal theory with fake and incorrect legal citations. For example, the Opposition cites two cases (without reporter designations) that do not exist. (Doc. 20, hereinafter "Opp.", at 24, citing *Turnbough v. Nationstar* (N.D. Tex. 2017) (fictious citation that Plaintiff improperly asserts was cited by Citibank); *Bozek v. Bank of Am.* (E.D. Pa. 2019) (same)). And the other cases cited by Plaintiff having nothing to do with UCC § 3-311, accord and satisfaction, debt cancellation, or unilateral contracting. (Opp. at 22, citing *Heideman v. Milbank Mut. Ins. Co.*, 546 N.W. 2d 760 (Minn. Ct. App. 1996) (affirming entry of summary judgment against a widower seeking a life insurance policy payment); *Matthews v. Worthen Bank*, 741 F.2d 217 (8th Cir. 1984) (affirming entry of a directed verdict against consumer who alleged a bank violated the FCRA by obtaining a copy of his credit report)).

The reason for Plaintiff's lack of genuine authority is clear: his purported "contract" for elimination of his debt "has no binding effect on Citibank." *Evans v. Fraser*, No. 24-CV-4472 (NEB/SGE), 2025 U.S. Dist. LEXIS 127688, *10 (D. Minn. May 23, 2025) (citing *Wagner*, 2024 U.S. Dist. LEXIS 181553, at *7). Plaintiff's UCC § 3-311 claim— and his entire case—therefore fails under Rule 12(b)(6).

### 2.    Plaintiff's FCRA claim remains meritless

Plaintiff's FCRA claim fails for three independent reasons. *First*, the FCRA claim is predicated on the allegation that Citibank continued to "report the account as charged-off with a balance of $18,598" after Plaintiff allegedly cancelled his debt. (Compl. at 2). Because Plaintiff did *not* validly "extinguish" his debt—as he so claims (Opp. at 18)—Citibank did not violate the FCRA by reporting that debt.

*Second*, Plaintiff has not established that Citibank received a dispute notice *from a credit reporting agency*, which is a prerequisite to filing an FCRA claim. (Doc. 14 at ECF pp. 20-22, citing, *inter alia*, *Anderson v. EMC Mortg. Corp.*, 631 F.3d 905, 907 (8th Cir. 2011)). Plaintiff attempts to evade that requirement by claiming that filing a dispute on the Consumer Financial Protection Bureau ("CFPB") portal constitutes proper notice from a credit reporting agency ("CRA"). (Opp. at 17-18). However, in support of his assertion that "a CFPB-forwarded dispute is CRA notice," Plaintiff cites two fake cases that do not exist, *Barrow v. Synchrony Bank*, 2023 WL 4556712 (D. Md.) and *Peterson v. Citizens Bank*, 2024 WL 947621 (E.D. Pa.), and misquote a federal regulation, 12 C.F.R § 1022.43(e)(1). (*Id.*). And the only other case cited by Plaintiff, *McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 916 (8th Cir. 2014), does not mention the CFPB. Thus, Plaintiff has proffered nothing in his Opposition to show that he received "a notice of dispute from the credit reporting bureau itself." *Glover v. Tigani*, No. 23-cv-171 (JRT/TNL), 2023 U.S. Dist. LEXIS 60134, *9 (D. Minn. Mar. 31, 2023). His FCRA claim therefore fails.

*Third*, Plaintiff has failed to properly plead that Citibank breached any duty to investigate a *factual* dispute under the FCRA. As explained in Citibank's opening

memorandum, the FCRA does not impose any duty to investigate *legal* disputes, and Plaintiff's contention that he consummated "a binding accord and satisfaction" with Citibank that eliminated his debt is a legal conclusion (albeit, an inaccurate one). (Doc. 14 at ECF pp. 22-23). Plaintiff does not contest this issue in his Opposition—nor can he, as the law is clear that an alleged credit reporting inaccuracy which is "based on a legal conclusion or legal issue…cannot support an FCRA claim." *Lloyd v. TD Bank USA, N.A.*, No. 22-2421 (DWF/DJF), 2023 U.S. Dist. LEXIS 122098, at *13-15 (D. Minn. July 17, 2023). For all of those reasons, the FCRA claim must be dismissed with prejudice.

### 3.    Plaintiff cannot state a claim under the FDCPA.

Plaintiff's FDCPA claim fails for similar reasons. First and foremost, this claim is also premised on the allegation that Citibank engaged in improper debt collection by trying to collect debt owed on the Account after Plaintiff allegedly "extinguished it under UCC § 3-311." (Opp. at 21). Again, Plaintiff did not discharge his debt through his $500 "settlement" check and Bill of Exchange. Accordingly, Citibank did not violate the FDCPA by referring Plaintiff's debt to a law firm for collection, as Plaintiff contends. (*Id.* at 20).

Plus, it is well-established that "FDCPA claims may only be brought against 'debt collectors,'" as that term is defined in the Act. *Petronykoriak v. Equifax Info. Servs. LLC*, No. 19-cv-10784, 2019 U.S. Dist. LEXIS 153909, *6 (E.D. Mich. Sept. 10, 2019). Citibank is Plaintiff's creditor, not a debt collector under the FDCPA. (Doc. 14 at ECF pp. 23-25). Plaintiff's Opposition presents no authority to support his argument that Citibank is a debt collector. (*See* Opp. at 19-21). Instead, Plaintiff erroneously asserts that a case from this Court, *McCorvey v. Citibank*, N.A.*,* 2024 WL 521214 (D. Minn. Feb. 9, 2024), has applied

4

the "FDCPA to Citibank and its agents when acting post-default" and "classifies [the present scenario] as debt-collector conduct." (*Id.*). But *McCorvey* does not exist.

Plaintiff also cites *Bridge v. Ocwen Loan Servicing, LLC*, 681 F.3d 355, 362 (6th Cir. 2012), claiming it is "binding" on the issue of whether Citibank is a "debt collector under § 1692a(6)." (Opp. at 21). But in *Bridge*, the court held that a mortgage loan servicer could be considered a debt collector under the FDCPA because it "did not originate the debt in question" and was not the consumer's creditor. *Bridge*, 681 F.3d at 359-362. In contrast, Citibank did originate the debt on the Account and is Plaintiff's creditor. Dismissal of Plaintiff's FDCPA claim is therefore warranted because Citibank cannot be liable under the FDCPA for attempting to collect on its own debt, *Glover*, 2023 U.S. Dist. LEXIS 60134, at *9, and Plaintiff has not presented any real authorities to the contrary.

### 4.    TILA and UCC § 9-210 are facially inapplicable.

Plaintiff's TILA claim makes no sense. As explained in Citibank's opening memorandum, 15 U.S.C. § 1666d only applies when a "credit balance" is owed back to the borrower—or, as Plaintiff puts it, when "a creditor must promptly refund" the borrower for a payment made "in excess of the amount due." (Opp. at 25). In his Opposition, Plaintiff asserts for the first time that he "requested refund of any credit balance" from Citibank and Citibank failed to refund him that credit balance in violation of 15 U.S.C. § 1666d. (Opp. at 24-25). This assertion was not made in the Complaint and therefore should be disregarded. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (stating that facts not included in a plaintiff's complaint cannot be considered on a motion to dismiss). Indeed, the Complaint says the exact opposite—namely, that Plaintiff no longer

5

owes his $18,598 debt to Citibank, not that Citibank owes Plaintiff some unspecified "credit balance" to his Account. TILA, 15 U.S.C. § 1666d, is therefore inapplicable.

Similarly, Plaintiff's claim pursuant to UCC § 9-210 fails because Plaintiff does not and cannot plead that the debt owed on his credit card account with Citibank is "secured by collateral", which is required for UCC § 9-210 to be applicable. In an attempt to refute this argument, Plaintiff erroneously asserts that "[u]nder *In re Modtech Holdings,* LLC, 441 B.R. 149, 160-62 (Bankr. C.D. Cal. 2010), credit-card receivables are Article 9 collateral" and "where receivables are pooled into trusts, the obligor retains the right to demand a ledger under § 9-210." (Opp. at 26). But this citation is also faulty. The reporter "441 B.R. 149" is actually the case *Maddox v. Auburn Univ. Fed. Credit Union*, 441 B.R. 149 (M.D. Al. 2010). *Maddox* relates only to a creditor's attempt to collect debt after receiving a notice of bankruptcy; it does not mention credit cards, the UCC, or collateral. Plaintiff has therefore failed to properly plead a claim under either UCC § 9-210 or TILA.[2]

### 5.    Plaintiff cannot bring a cause of action under the Tax Code.

The Internal Revenue Code does not provide a private right of action. (Doc. 14 at ECF p. 27, citing, *inter alia*, 28 C.F.R., Part 0, Subpart Y, Appendix § 10). Plaintiff challenges this in his Opposition, but each of the citations he includes in support of his position are fake or incorrect. Indeed, three of his cases do not exist at all: *Klett v. Capital One Servs., LLC*, 501 F.Supp.3d 623 (E.D. Va. 2020), *Foster v. FedEx Ground*, 2023 WL

---

[2] Plaintiff includes references to Minnesota state statutes for the first time in his Opposition. (Opp. at 25). These cannot be considered because they were not pled in the Complaint. In any event, the arguments articulated herein apply with equal force to the state statutes newly cited by Plaintiff.

4156749 (D. Minn. June 22, 2023), and *Roeske v. Chase Bank USA, N.A.*, 2022 WL
11305017 (E.D. Mich. Oct. 17, 2022)). (Opp. at 29). And Plaintiff's other citations are
facially inapposite. (Opp. at 29, citing *Johnson v. Midland Credit*, 2023 WL 6543217 (N.D.
Cal. Sept. 5, 2023) (appellate brief regarding a motion to dismiss an employment contract
dispute), and 27 U.S.C. § 7434(a) (relating to the filing of a fraudulent information return,
not the failure to file a Form 1099-C)). Plaintiff's Tax Code claim should accordingly be
dismissed with prejudice.

### 6.    Plaintiff did not oppose dismissal of his GLBA claim

Plaintiff also cannot bring a private right of action under the Gramm-Leach-Bliley
Act ("GLBA"). (Doc. 14 at ECF p. 27, *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d
956, 960 (8th Cir. 2007)). Plaintiff does not contest this in his Opposition or otherwise seek
to save his GLBA claim. This claim should therefore be dismissed too. *See Doll v. Trellis
Walnut Towers LLC*, No. 24-cv-136, 2024 WL 4355084, *3-4 (Sept. 30, 2024 D. Minn.)
(a plaintiff waives claims not addressed in the opposition to a motion to dismiss).

### B.    Plaintiff's procedural arguments do not overcome Citibank's motion.

Plaintiff's claims fail on the merits. Plaintiff attempts to distract from that by
claiming Citibank did not comply with procedural rules in bringing its motion. (Opp. at 4-
6). But Plaintiff's procedural arguments are meritless and do not change the outcome here.

### 1.    Citibank complied with Local Rule 7.1.

Plaintiff first contends Citibank did not comply with Local Rule 7.1(a) because its
counsel allegedly did not hold a "meaningful conference" with him and "avoided real
dialogue that might narrow [his] claims." (Opp. at 4-5). This is false.

On July 21, 2025, two days in advance of filing its motion to dismiss, Citibank sent Plaintiff an email detailing the arguments it intended to make in support of its motion. (Reply Declaration of Kathryn Wendt ("Wendt Reply Decl.") Ex. A). Specifically, the email stated:

> The primary basis for Defendant's motion to dismiss is that there is no enforceable "contract" between you and Citibank to eliminate the debt on your credit card account. The breach of contract claim therefore fails due to the lack of any valid "contract" for discharge of your debt. The other claims fail in turn for at least the following reasons:
>
> - Citibank is not a debt collector under the FDCPA.
>
> - The Complaint does not allege that Citibank received any dispute notice from a credit reporting agency with respect to your account.
>
> - The FCRA does not impose any duty to investigate legal conclusions.
>
> - 15 U.S.C. § 1666d, UCC § 9-210, and UCC § 3-311 do not apply to the facts of this case.
>
> - There is no private right of action under the UCC, the GLBA, or the Internal Revenue Code.

(*Id.*). The email invited a call with Plaintiff to discuss any of those issues. (*Id.*).

Plaintiff responded by stating he could discuss on July 22, 2025, and Citibank's counsel spoke to Plaintiff on that date. (Wendt Reply Decl. ¶ 3). During the call, counsel specifically asked Plaintiff if he had any questions about the bases for Citibank's motion that were listed in the email, **and he had none**. (*Id.*). Plaintiff also did not offer any resolution to the issues raised in Citibank's email and did not mention that he could or would "narrow [his] claims" or otherwise amend his pleading to address any of the defects noted by Citibank. (*Id.*). Moreover, after the call, Plaintiff sent an email confirming that Citibank had satisfied its meet-and-confer obligations, stating: "**This discussion satisfies**

**the procedural requirement under Local Rule 7.1** prior to your anticipated Motion to Dismiss." (*Id.* at Ex. A, emphasis added). Thus, Plaintiff's attempt in his Opposition to contradict his own prior admission is unavailing.

In his Opposition, Plaintiff makes much of the fact that the meet-and-confer call purportedly lasted only four minutes. (Opp. at 5, 11). But significantly, Plaintiff does not explain how a longer call would have changed the outcome here. Nor can he. During the call, Plaintiff disputed that he was bound by the Cardholder Agreement (calling it merely an "alleged" contract) and indicated that his contract with Citibank was instead his own unilateral "settlement" contract. (Wendt Reply Decl. ¶ 4). Thus, it was clear on the call (and it remains clear now) that the parties have a fundamental disagreement on the heart of this case—*i.e.,* on whether Plaintiff's unilateral contract theory to cancel his debt is viable. That is a legal conclusion for the Court to make—not a factual or procedural issue for the parties to amicably resolve via further meet-and-confer efforts. *See* LR 7.1(a)(1)(B).

Further, the authority cited by Plaintiff to support his argument that the Court should "strike" Citibank's motion to dismiss due to its allegedly "perfunctory" meet-and-confer call, *Bachman v. Velocity Invs., LLC*, No. 21-cv-1188, 2022 WL 1683681, at *2 (D. Minn. May 26 2022), says no such thing. (Opp. at 5). The citation 2022 WL 1683681 links to a Press Release from the Environmental Protection Agency about the results of groundwater and soil sampling at a refinery site in Chicago. It has nothing to do with LR 7.1(a). Thus, contrary to Plaintiff's assertion, *Bachman* does not stand for "striking [a] motion for failing to meaningfully meet and confer." (Opp. at 5). Plaintiff's LR 7.1 arguments fail.

##### 2.    Citibank complied with Federal Rule of Civil Procedure 5.

Plaintiff also contends in his Opposition that Citibank somehow deprived Plaintiff of sufficient time to respond to the motion to dismiss, alleging that Citibank "sprang a 29-page brief" on him, denied him "necessary processing time," and gave him "zero practical notice during the briefing window." (Opp. at 5-6). This argument is specious.

On July 23, 2025, the deadline to respond to Plaintiff's Complaint, Citibank timely filed its motion to dismiss and supporting documents. (Doc. No. 13). That same day, Citibank timely served its motion materials on Plaintiff by mailing the documents to his last known address, in compliance with the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 5(b)(2)(C) ("A paper is served under this rule by…mailing it to the person's last known address—in which event **service is complete upon mailing**"). Citibank had to mail the documents to Plaintiff because he has not registered for e-service in this case through the Court's CM/ECF system.[3] (Wendt Reply Decl. ¶ 5).

Plaintiff normally would have had until August 13, 2025—21 days after Citibank's motion filing—to submit his opposition materials pursuant to LR 7.1(c)(2). But because service had to be made by mail, Plaintiff got 3 additional days to respond to Citibank's motion to dismiss pursuant to Fed. R. Civ. P. 6(d). And, because the third day after August 13 falls on a Saturday (August 16), Plaintiff actually had until Monday, August 18, 2025, to file his opposition materials pursuant to Fed. R. Civ. P. 6(a)(1)(C). Plaintiff did not avail

---

[3] Plaintiff complains in his Opposition that he did not receive "electronic service." (Opp. at 6). That is Plaintiff's own fault. If he wants to receive e-service in this case, he is free to register to use the CM/ECF system.

himself of that extra time, nor did he seek additional time to respond. Instead, **by his own choice**, Plaintiff filed his opposition materials on August 6, 2025. That is not Citibank's fault, and Plaintiff cannot now blame Citibank for purportedly "undermin[ing] meaningful participation by Plaintiff." (*See* Opp. at 6).

The authorities cited by Plaintiff do not change that result. Plaintiff cites *Hernandez v. Midwest Transit Servs., Inc.*, 479 F. Supp. 3d 644, 652 (N.D. Ill. 2020), for the proposition that "sanctions or denial of relief are warranted" when a moving party "chooses slower mail service over readily available electronic means and the delay prejudices a disabled opponent." (*Id.*). But this case does not exist. Instead, the citation 479 F. Supp. 3d 611 is for a case in the Southern District of Ohio, *Phillips v. City of Cincinnati*, which has nothing to do with service by mail. Plaintiff also cites *United States v. $34,430.00 in U.S. Currency*, 2 F.4th 1130, 1135 (8th Cir. 2021), for the proposition that "courts strike or discount late-served briefs that prejudice an opponent." (Opp. at 6). This citation also does not exist. Rather, the pin cite 2 F.4th 1130 is within the case *United States v. Callison*, 2 F.4th 1128 (8th Cir. 2021), which does not mention striking untimely briefs. Plaintiff's arguments regarding the timing and service of Citibank's motion are therefore baseless.

### 3.    This Court has the inherent power to control its docket.

Plaintiff also faults Citibank for not permitting a hearing on its motion or discovery on Plaintiff's claims. (Opp. at 6). These allegations lack merit.

In accordance with Judge Tostrud's practice pointers, Citibank's counsel contacted the Courtroom Deputy on July 21, 2025 to obtain available hearing dates for its motion. (Wendt Reply Decl. ¶ 6). However, the Courtroom Deputy directed Citibank to "please put

a date and time to be determined" in its notice of motion, stating: "Once Judge Tostrud receives the motion papers he will decide on whether he would like a hearing." (*Id.*). Citibank complied with that directive (Doc. 18) and therefore is not at fault for not noticing a precise hearing date.

Plaintiff's allegation that Citibank somehow improperly "froze discovery" is similarly defunct. (Opp. at 6). On July 24, 2025, the Court issued a Text-Only Order declining to enter a pretrial scheduling order until "after a decision is issued" on Citibank's motion to dismiss. (Doc. 19). The Court entered that Order *sua sponte*, which it had the "inherent power" to do. *Kemp v. Tyson Seafood Group, Inc.*, 19 F. Supp. 2d 961, 964 (D. Minn. 1998). Thus, Citibank has not engaged in any procedural gamesmanship, as Plaintiff wrongly contends.

### 4.    The Court may consider Plaintiff's exhibits if it so chooses.

Plaintiff also complains in his Opposition about Citibank's "reliance on documents outside the pleadings." (Opp. at 14). However, the only documents outside the Complaint that are referenced in Citibank's motion to dismiss are *Plaintiff's own exhibits*. Plaintiff's Complaint expressly cites these exhibits, and his Opposition refers to his "Verified Complaint with supporting Exhibits 001-019." (*Id.* at 10). Plaintiff also previously filed a so-called "Judicial Notice of Incomplete Removal and Clarification of Exhibit Record," wherein he alleged that "critical materials filed in the state court record—specifically, Exhibits 001 through 019—ha[d] not been included in the federal docket" post-removal. (Doc. 8 at 1). Thus, Plaintiff himself has asked the Court to consider his exhibits.

12

If the Court chooses to do so, that would not convert Citibank's motion to dismiss into a motion for summary judgment. *Flora v. Firepond, Inc.*, 260 F. Supp. 2d 780, 784 (D. Minn. 2003) ("[I]n addressing motions to dismiss under Fed. R. Civ. P. 12(b)(6)… courts may consider materials that are necessarily embraced by the pleadings…without converting the motion to a summary judgment motion.") (internal citations omitted). In any event, Plaintiff's claims fail on the merits *with or without* his exhibits, so the result of Citibank's motion is the same whether or not the Court considers his exhibits.[4]

### 5. Citibank properly responded to Plaintiff's Complaint.

Lastly, Plaintiff complains in his Opposition that "Citibank was never filed an Answer" to his Complaint and is therefore at risk of "default" in this case. (Opp. at 12). Not so. Rule 12 expressly permits a defendant to respond to a complaint "by motion," rather than through a "responsive pleading," which is what Citibank did here. Fed. R. Civ. P. 12(b). Citibank is not required to file an answer unless and until the Court denies all or part of Citibank's motion to dismiss. Fed. R. Civ. P. 12(a)(4)(A).

For all the reasons stated in this Section II.B, Plaintiff's procedural arguments fail, and his claims should be dismissed on the merits.

### C. Plaintiff should be sanctioned for his use of false legal citations.

"An attempt to persuade a court or oppose an adversary by relying on fake opinions"—as Plaintiff has done in his Opposition—"is an abuse of the adversary system."

---

[4] Contrary to Plaintiff's contention, mere consideration of Plaintiff's exhibits at the Rule 12 stage would not "judicially estop" Citibank from later "disputing their authenticity or relevance" if the Court were to deny Citibank's motion. (*See* Opp. at 15).

*Mata v. Avianca, Inc.*, 678 F. Supp.3d 443, 460 (S.D.N.Y. 2023). Courts across the country have been cracking down on the reckless use of artificial intelligence ("AI") to draft legal briefs because of the resulting increased likelihood that fake citations are included in such briefs. *See United States v. Hayes*, 763 F.Supp.3d 1054, 1071 (E.D. Cal. 2025) (collecting cases in which attorneys and *pro se* parties were sanctioned for submitting fictious case citations or quotations and related misrepresentations).

Sanctions issued by courts for this misconduct include monetary sanctions, striking the filing at issue, and dismissing the complaint. *See id.* These sanctions have been levied against *pro se* litigants. *See, e.g., Thomas v. Pangburn*, CV423-046, 2023 WL 9425765 at *5 (S.D. Ga. Oct. 6, 2023) (recommending dismissal of a *pro se* plaintiff's complaint as a sanction for the use and inadequate explanation of fake citations); *Kruse v. Karlen*, 692 S.W.3d 43, 52-53 (Mo. Ct. App. 2024) (sanctioning *pro se* party $10,000 in attorneys' fees and dismissing his appeal because of the use of fictious and incorrect legal authorities). This Court recently cited *Kruse* and "add[ed] its voice to a growing chorus of courts around the country: verify AI-generated content in legal submissions!" *Kohls v. Ellison*, No. 24-cv-3754-LMP/DLM, 2025 U.S. Dist. LEXIS 4928, *11 (D. Minn. Jan. 10, 2025).

Based on research by defense counsel, Plaintiff's Opposition appears to contain at least 12 citations to nonexistent cases.[5] Plaintiff's Opposition also contains approximately 19 other citations that lead to documents having zero relevance to this case.[6] For example:

- 2022 WL 1683681 (cited as *Bachman v. Velocity Invs.*, D. Minn.), which Plaintiff asserts relates to Local Rule 7.1 violations, is a citation to an Environmental Protection Agency press release;

- 2018 WL 1239056 (cited as *Barber v. MRTC*, D. Minn), which Plaintiff asserts relates to the denial of ADA accommodations, is a patent status file;

- 973 F.3d 1016 (cited as *Sellers v. Experian Info. Sols., Inc.*, 8th Cir.), which Plaintiff asserts relates to CRA reporting, is an equal protection case filed by parents of Hindu children in California schools;

---

[5] These citations are *Barrow v. Synchrony Bank*, 2023 WL 4556712 (D. Md.); *Bozek v. Bank of Am.* (E.D. Pa. 2019); *Foster v. FedEx Ground*, 2023 WL 4156749 (D. Minn.); *Hernandez v. Midland Credit Mgmt.*, 79 F.4th 771 (8th Cir. 2023); *Hernandez v. Midwest Transit Servs., Inc.*, 479 F. Supp. 3d 644 (N.D. Ill 2020); *Klett v. Capital One*, 501 F. Supp.3d 623 (E.D. Va. 2020); *Leventhal v. MandMarblestone Grp.*, 639 F. App'x 183 (3d Cir. 2016); *McCorvey v. Citibank*, 79 F.4th 771 (8th Cir. 2023); *Peters v. U.S. Bank N.A.*, 2020 WL 604884 (D. Minn.); *Peterson v. Citizens Bank*, 2024 WL 947621 (E.D. Pa.); *Roeske v. Chase Bank USA*, N.A., 2022 WL 11305017 (E.D. Mich.); and *Turnbough v. Nationstar* (N.D. Tex. 2017).

[6] These citations are *Bachman v. Velocity Invs.*, 2022 WL 1683681 (D. Minn.); *Barber v. MRTC*, 2018 WL 1239056 (D. Minn.); *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707 (8th Cir. 2015); *Heideman v. Milbank Mut. Ins.*, 546 N.W.2d 760 (Minn. Ct. App. 1996) (also cited as *In re Heideman*); *Hernandez v. City of Corpus Christi*, 820 F.3d 782 (5th Cir. 2016); *Johnson v. Midland Credit Mgmt.*, 2023 WL 6543217 (N.D. Cal.); *Knowles v. TD Ameritrade*, 2 F. 4th 751 (8th Cir. 2021); *Metropolitan Airports Comm'n v. Duluth Aviation*, 2017 WL 8780602 (D. Minn.); *Modtech Holdings, LLC, In re*, 441 B.R. 449 (Bankr. C.D. Cal. 2010); *Montanile v. Nat'l Broad. Co.*, 211 F. Supp. 2d 481 (S.D.N.Y 2002); *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *O'Neil v. Simms*, 2009 WL 4823842 (D. Minn.); *Petersen v. Citibank (S.D.), N.A.*, 637 F. Supp. 84 (D. Utah 1986); *Pierce v. District of Columbia*, 128 F. Supp. 3d 250 (D.D.C. 2015); *Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999*); Sellers v. Experian Info. Sols., Inc.*, 973 F.3d 1016 (8th Cir. 2020); *United States v. $34,430*, 2 F.4th 1130 (8th Cir. 2021); and *Webster v. Fall*, 266 U.S. 507 (1925).

- 84 F.3d 1166 (cited as *NationsBank v. NBN Elec., Inc.*, 8th Cir.), which Plaintiff asserts relates to UCC § 3-311, is a case regarding Section 1983 Civil Rights and constitutional violations alleged against a police officer; and

- 2023 WL 6543217 (cited as *Johnson v. Midland Credit*, N.D. Cal.), which Plaintiff asserts relates to private enforcement of 26 U.S.C. § 7434 claims, is an appellate brief regarding a motion to dismiss an employment dispute.

Lastly, considering Plaintiff's citations generously, another 10 citations are tangentially related to the subject matter of the case, but do not relate to the proposition that the citation purports to support.[7]

Misleading and false citations like those espoused by Plaintiff cause significant harm, including "wasting the opposing party's time and money, the Court's time and resources, and reputational harms to the legal system (to name a few)." *Kohls*, 2025 U.S. Dist. LEXIS 4928, at *13 (internal quotations and citations omitted). "Courts therefore do not, and should not, make allowances for a party who cites to fake, nonexistent, misleading authorities." *Id.* And given the pervasiveness of improper sources in Plaintiff's Opposition, sanctions are warranted in this case. Accordingly, Citibank respectfully asks the Court to strike Plaintiff's Opposition, to dismiss his case with prejudice, and to award Citibank its court costs incurred in this frivolous lawsuit, including the $405 fee paid upon removal and the $405 fee paid upon the filing of Citibank's motion to dismiss.

---

[7] These citations are *Bridge v. Ocwen Loan Servicing, LLC*, 681 F.3d 355 (6th Cir. 2012); *Carton v. Gen. Motor Acceptance*, 611 F.3d 451 (8th Cir.); *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927 (8th Cir. 2012); *Hunt v. JPMorgan Chase Bank*, 770 F. App'x 452 (11th Cir. 2019); *Tennessee v. Lane*, 541 U.S. 509 (2004); *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695 (8th Cir. 2003); *Matthews v. Worthen Bank*, 741 F.2d 217 (8th Cir. 1984); *New Hampshire v. Maine*, 532 U.S. 742 (2001); *Topchian v. JPMorgan Chase Bank*, 760 F.3d 843 (8th Cir. 2014); and *In re Tusa-Expo Holdings*, 811 F.3d 786 (5th Cir. 2016).

### D.    Plaintiff is not entitled to amend his Complaint.

Buried in his 39-page brief, Plaintiff asserts a limited request to amend: "Should the Court perceive any technical defect, Plaintiff requests leave to amend under Rule 15(a)(2)." (Opp. at 13). The Court should reject this request for two primary reasons.

*First*, Plaintiff's Complaint does contain mere "technical defects." Rather, the debt-avoidance scheme that forms the basis for his entire case has already been deemed "frivolous" by this Court and others. (*See* Opp. at 16-19). In both *Wagner* and *Evans*—the two cases most directly on point here—this Court dismissed all claims "with prejudice" because the borrower's unilateral contract theory was "'frivolous, such that any amendment would be futile.'" *Evans*, 2025 U.S. Dist. LEXIS 127688, at *10 (quoting *Wagner*, 2024 U.S. Dist. LEXIS 181553, at *9). Citibank urges the Court to reach the same result here.

*Second*, Plaintiff did not properly raise his request for leave to amend. "[A] party is not entitled to amend a complaint without making a showing that such an amendment would be able to save an otherwise meritless claim." *Plymouth County v. Merscorp, Inc.*, 774 F.3d 1155, 1160 (8th Cir. 2014). Plaintiff has failed to make that showing through his one sentence in his Opposition brief. *See Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1051 (8th Cir. 2021). In *Rivera*, the Eighth Circuit spoke definitively on this issue:

> [T]he district court denied [plaintiff] leave to amend because [plaintiff] failed to file a proper motion or provide an explanation of what his proposed amendment would contain. Instead, [plaintiff] offered only a conclusory request in his response in opposition to [defendant's] motion to dismiss. We have previously held that a district court did not abuse its discretion by denying a request for leave to amend a complaint when the request was raised in a single sentence in response to a motion to dismiss and the party made no

17

motion for leave nor attempted to explain the substance of the proposed amendment. *See Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006). The same scenario occurred here: [plaintiff] made a two-sentence request for leave to amend his complaint in response to [defendant's] motion to dismiss and did not make any other effort to move for or explain why he was entitled to such leave or explain what his proposed amendment would contain. On this record, we conclude that the district court did not abuse its discretion in denying [plaintiff] leave to again amend his complaint.

*Id. See also United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 956 (8th Cir. 2017) (denying leave to amend because plaintiff "raised this issue with a one line request in her brief opposing defendants' motion to dismiss", "did not provide the substance of the proposed amendments", and "made no motion for leave to amend"); *United States ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749-750 (8th Cir. 2005) (denying leave to amend because plaintiff "first requested leave to amend in her opposition to [defendant's] motion to dismiss", failed to "detail the substance of her amendment or delineate which new claims she would assert", and "failed to submit a copy of her amended pleading—which would have notified the district court of the content of her amended claims—as required by the District of Minnesota's Local Rule 15.1.").

The law is clear on this issue and dictates the outcome here. Plaintiff has not complied with the rules for filing a proper motion to amend.[8] He has not submitted a proposed amended pleading or otherwise explained the substance of any anticipated

---

[8] Plaintiff's "status as a pro se litigant [does] not excuse [him] from following the local rules." *Bunch v. Univ. of Ark. Bd. of Trs.*, 863 F.3d 1062, 1067 (8th Cir. 2017). *See also Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (holding that plaintiff's "pro se status did not entitle him to disregard the Federal Rules of Civil Procedure") (citing *Carman v. Treat*, 7 F.3d 1379, 1381 (8th Cir. 1993)).

amendments. And he has not made any effort to "explain why he was entitled to such leave" to amend in the first place. *Rivera*, 993 F.3d at 1051. "Instead, [Plaintiff] offered only a conclusory request in his response in opposition to [Citibank's] motion to dismiss." *Id.* That is not sufficient under any of the authorities cited above. Plaintiff's improper request for leave to amend therefore fails and should be rejected. *Misischia*, 457 F.3d at 805.

## III.    <u>CONCLUSION</u>

In conclusion, Citibank asks the Court to grant its motion to dismiss, to dismiss Plaintiff's Complaint in its entirety with prejudice, and to award Citibank its costs.

Dated: August 20, 2025

**BALLARD SPAHR LLP**

Respectfully submitted,

By: */s/ Kathryn E. Wendt*

Karla M. Vehrs (#0387086)
vehrsk@ballardspahr.com
Kathryn E. Wendt (#0397737)
wendtk@ballardspahr.com
Samantha Pauley (#0505789)
pauleys@ballardspahr.com
    2000 IDS Center 80 South 8th Street
    Minneapolis, MN 55402-2119
    Telephone: 612.371.3211
    Facsimile: 612.371.3207

***Attorneys for Defendant Citibank, N.A.***