UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

James Andrew Grimmer, *Secured Party Creditor, Sui Juris, In Propria Persona*,

    Plaintiff,

v.

Citibank, N.A.,

    Defendant.

File No. 25-cv-2758 (ECT/DLM)

**OPINION AND ORDER**

---

James Andrew Grimmer, Pro Se.

Karla M. Vehrs, Kathryn E. Wendt, and Samantha Pauley, Ballard Spahr LLP, Minneapolis, MN, for Defendant Citibank, N.A.

---

Pro se Plaintiff James Andrew Grimmer claims Defendant Citibank, N.A., breached a contract and violated several federal statutes. Citibank seeks the case's dismissal under Federal Rule of Civil Procedure 12(b)(6). The motion will be granted because Grimmer's claims are not plausible. On a different issue, I will not order separate proceedings to determine whether sanctions should be imposed on Grimmer for citing numerous nonexistent cases in his opposition brief.

I

Begin with the basic standards governing Citibank's Rule 12(b)(6) motion. In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir.

2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*

Considering "matters outside the pleadings" generally transforms a Rule 12(b)(6) motion into one for summary judgment, Fed. R. Civ. P. 12(d), but not when the relevant materials are "necessarily embraced" by the pleadings. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017). "In general, materials embraced by the complaint include documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Id.* at 526 (citation modified). Courts "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Id.* (citation modified); *see Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012). Generally, a contract that governs the parties' relationship and is relevant to the dispute is necessarily embraced by the pleadings and may be considered at the Rule 12(b)(6) stage. *Zean*, 858 F.3d at 526–27.

2

To these general rules, add the "liberal construction" rule favoring pro se plaintiffs. Because he is pro se, Grimmer's Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The liberal-construction rule does not excuse a pro se plaintiff from alleging sufficient facts to support the claims he advances. *Stone*, 364 F.3d at 914. And notwithstanding the liberal-construction rule, "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012).

## II

Here, the Complaint's factual allegations are sparse and somewhat opaque. As best I can tell, the story is this: Grimmer had an "account" with Citibank. Compl. [ECF No. 1-1] ¶ 6. At some point, the account had a "balance of $18,598." *Id.* In early 2024, Grimmer sent Citibank a $500 check. *Id.* ¶ 5. Grimmer offered the check "in full and final settlement" of whatever amount he then owed on his Citibank account. *Id.* Citibank did not "reject or return" Grimmer's check. *Id.* Grimmer claims the legal consequence of Citibank's failure to reject or return his $500 check was "a binding accord and

3

satisfaction." *Id.* In other words—presuming Grimmer intended "accord and satisfaction" to share the familiar legal concept's ordinary meaning—his position is that Citibank agreed to accept $500 as a substitute for the larger debt Grimmer owed and to discharge the larger debt. *See id.*; *see also Accord and Satisfaction*, *Black's Law Dictionary* (12th ed. 2024). Notwithstanding this agreement, Citibank continued to report the debt to credit reporting agencies "as charged-off with a balance of $18,598" and referred the account to a collection agency. Compl. ¶¶ 6, 8. Along the way, Grimmer filed complaints and reports with the Consumer Financial Protection Bureau and the Internal Revenue Service. *Id.* ¶¶ 4, 10. And he demanded documents from Citibank, though he alleges Citibank did not provide them. *Id.* ¶ 7. A document embraced by the Complaint adds relevant details. Grimmer's Citibank account was governed by a "Card Agreement." ECF No. 15-18 at 18–31 (entire agreement); *id.* at 22 ("This Card Agreement . . . is your contract with us."); *id.* at 23 ("This Agreement takes effect once you use your Card.").[1] Among other provisions, the Card Agreement prohibited Grimmer from "includ[ing] any restrictive endorsements on [a] check" sent to Citibank for payment. *Id.* at 26. The Card Agreement also provided that, if Grimmer did not follow the contract's payment instructions, Citibank reserved the right to "accept [his] payment without losing [its] rights." *Id.*

---

[1] Page citations are to pagination assigned by CM/ECF, appearing in a document's upper right corner, not to a document's original pagination or to pagination assigned by the parties.

Grimmer claims Citibank's actions amounted to a breach of contract under "UCC § 3-311" and separately violated "UCC § 9-210." Compl. at 6. And Grimmer claims Citibank's actions violated five federal statutes: the Fair Credit Reporting Act (or "FCRA"), 15 U.S.C. §§ 1681s-2 and 1681i; the Fair Debt Collection Practices Act (or "FDCPA"), 15 U.S.C. §§ 1692e and 1692g; the Truth in Lending Act (or "TILA"), 15 U.S.C. § 1666d and 12 C.F.R. § 1026.9; the Gramm-Leach-Bliley Act (or "GLBA"), 12 C.F.R. § 1016; and an Internal Revenue Service statute, 26 U.S.C. § 6050P. Compl. at 6.[2] He seeks a variety of legal and equitable relief, including damages of $3.5 million. *Id.* at 6–7. After Grimmer brought this case in Minnesota state district court, Carver County, Citibank removed the case based on Grimmer's assertion of federal statutory claims, 28 U.S.C. § 1331, and based on the alleged presence of diversity jurisdiction, 28 U.S.C. § 1332(a). *See* ECF No. 1.

---

[2] In his opposition brief, Grimmer describes the Complaint as containing a claim under Title II of the Americans with Disabilities Act (or "ADA"). ECF No. 20 at 38. The Complaint asserts no such claim. It does not mention the ADA, other than to request accommodations from the Court "in scheduling, presentation, or remote participation." Compl. at 7. In an introductory paragraph, Grimmer specifies that his claims are limited to "violations of federal and state law related to unlawful debt collection, false credit reporting, breach of contract, and consumer rights violations." *Id.* at 5. The Complaint's factual allegations are consistent with this introductory paragraph; they do not hint at a disability-related claim. *See id.* ¶¶ 4–11. Grimmer cannot amend his Complaint through a brief. *See Al-Saadoon v. Barr*, 973 F.3d 794, 805 (8th Cir. 2020) ("[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." (quotation omitted)). No ADA claim will be considered.

III

A

Though there is room for misunderstanding, the breach-of-contract claim seems based on essentially four allegations: (1) Grimmer's $500 check was an offer to substitute that amount for the larger debt Grimmer owed in consideration for Citibank discharging the larger debt; (2) Citibank accepted Grimmer's offer by cashing the check; (3) Citibank's acceptance resulted in an accord and satisfaction, meaning Grimmer's original $18,598 debt was discharged; and (4) Citibank breached this accord-and-satisfaction agreement by characterizing Grimmer's $18,598 debt as "charged off" and by continuing to pursue the debt's collection. *See* Compl. ¶¶ 5–6, 8.

The Uniform Commercial Code ("UCC") section on which Grimmer grounds this claim reads, in relevant part:

> If a person against whom a claim is asserted [here, Grimmer] proves that (i) that person in good faith tendered an instrument to the claimant [here, Citibank] as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, [then]
>
> the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.

U.C.C. § 3-311(a)–(b). There are two dismissal-prompting problems with this claim.

(1) A UCC provision is not governing law and does not become law until a state adopts the provision (or a version of it). Grimmer does not identify what state's version

6

of § 3-311 he is relying on to show an accord and satisfaction. It is true that many states have enacted § 3-311, or something very close to it. These include Minnesota and South Dakota, two states with connections to this case. Grimmer is a Minnesota citizen. Compl. ¶ 2; ECF No. 1 ¶ 11. Citibank is a South Dakota citizen, ECF No. 1 ¶ 12, and a choice-of-law provision in the Card Agreement says South Dakota law "govern[s] the terms and enforcement" of that contract, ECF No. 15-18 at 30. But differences in the states' interpretation of their § 3-311 analogs likely exist and may matter. For example, the Minnesota Supreme Court understands Minnesota's § 3-311 analog, Minn. Stat. § 336.3-311, "to codify [Minnesota's] common law elements of accord and satisfaction." *Webb Bus. Promotions, Inc. v. Am. Elecs. & Ent. Corp.*, 617 N.W.2d 67, 75 (Minn. 2000). In South Dakota, "[a]ccord and satisfaction is a matter of statute." *Berwald v. Stan's, Inc.*, 24 N.W.3d 420, 430 (S.D. 2025) (quoting *Scholl v. Tallman*, 247 N.W.2d 490, 491 (S.D. 1976)). It seems reasonable to suspect that these approaches might yield different outcomes in some cases. And it seems reasonable to expect even a pro se litigant to make that choice of law.

(2) Whether Grimmer meant to bring the claim under Minnesota's version of § 3-311, Minn. Stat. § 336.3-311, or South Dakota's, S.D. Codified Laws § 57A-3-311, he has not alleged facts plausibly showing that "the amount of the claim was unliquidated or subject to a bona fide dispute." Minn. Stat. § 336.3-311(a)(ii); S.D. Codified Laws § 57A-3-311(a)(ii). "An unliquidated claim is one which cannot be determined with exactness from the parties' agreement nor 'by the application of rules of arithmetic or of law.'" *Berwald*, 24 N.W.3d at 433 (quoting 3 *Williston on Contracts* § 7:35 (4th ed. 2025

Update)); *see Curtin v. United Airlines, Inc.*, 275 F.3d 88, 94 (D.C. Cir. 2001) (defining an "unliquidated" claim as one "that is uncertain or disputed in amount" (quotation omitted)); *Delta MB, LLC v. 271 S. Broadway, LLC*, --- F. Supp. 3d ---, No. 24-cv-00143-TSM, 2025 WL 2108819, at *14 (D.N.H. July 28, 2025) (defining "liquidated claim" as one "subject to ready determination and precision in computation of the amount due," such as "where a claim is determinable by reference to an agreement" (quotations omitted)); *In re Horne*, 277 B.R. 712, 715 (Bankr. E.D. Tex. 2002) (same). Here, the Complaint does not allege facts plausibly showing that Citibank's claim was unliquidated. The Complaint identifies the amount of Citibank's claim explicitly as $18,598. Compl. ¶ 6. And as is true of credit card accounts generally, the amount of Citibank's claim was subject to ready determination by refence to Grimmer's own charges and the Card Agreement. *See* ECF No. 15-18 at 14–21, 23–26. A "bona fide dispute" is "a dispute between the parties and not one confined to the mind of the sender of the check." *Berwald*, 24 N.W.3d at 433 (citation modified). "Further, a party's refusal to perform under a contract cannot create a dispute sufficient to support an accord and satisfaction." *Id.*; *cf. In re Rimell*, 946 F.2d 1363, 1365 (8th Cir. 1991) (defining "bona fide dispute" for purposes of bankruptcy code as requiring "substantial factual and legal questions raised by the debtor bearing upon the debtor's liability" (citation modified)). Here, the Complaint alleges no facts identifying a bona fide dispute. Apart from implying that Grimmer did not want to pay what he owed, it is silent on the question. Nowhere, for example, does the Complaint allege facts explaining why Grimmer disputed Citibank's claim or describing Citibank's response to any reasons Grimmer may have given.

B

Section 9-210 of the UCC gives a debtor the right, among others, to request "an accounting of the unpaid obligations secured by collateral" provided the request "reasonably identif[ies] the transaction or relationship that is the subject of the request." U.C.C. § 9-210(a)(2). A "secured party" is generally required to respond to the request "within 14 days after receipt." U.C.C. § 9-210(b). Grimmer alleges he requested an accounting from Citibank, Compl. ¶ 4, but Citibank failed to respond to the request, *id.* ¶ 7.

This claim will be dismissed. As with his § 3-311 claim, Grimmer does not identify what state's version of § 9-210 he is relying on for this claim. Regardless, in the form the provision has been adopted in Minnesota and South Dakota, it does not apply to Grimmer's Citibank account. Like the uniform provision, the Minnesota and South Dakota statutes confine a debtor's right to request an accounting and a recipient's obligation to respond to a debtor's request to circumstances where a debtor's "unpaid obligations" are "secured by collateral." Minn. Stat. § 336.9-210(a)(2); S.D. Codified Laws § 57A-9-210(a)(2). Both provisions focus exclusively on collateralized debts. *See generally* Minn. Stat. § 336.9-210(a)(2); S.D. Codified Laws § 57A-9-210(a)(2). The Complaint does not allege that Grimmer's Citibank account was secured by collateral. *See generally* Compl. Nor does the Card Agreement indicate in any way the account was secured by collateral. *See* ECF No. 15-18 at 18–31. The Minnesota and South Dakota versions of § 9-210 do not apply to Grimmer's relationship with Citibank.

C

Grimmer claims Citibank violated various subsections of the Fair Credit Reporting Act. Compl. ¶ 6. Grimmer's FCRA theory reads as follows: "Despite accepting settlement funds, Defendant continued to report the account as charged-off with a balance of $18,598 to TransUnion, Experian, and Equifax . . . , violating FCRA §§ 1681s-2(a)(1)(A), 1681s-2(b), and 1681i." Compl. ¶ 6. The theory is derived from Grimmer's accord-and-satisfaction theory because it depends on accepting the legal conclusion that Citibank's acceptance of Grimmer's $500 check amounted to an accord and satisfaction with respect to the $18,598 debt. I rejected that legal conclusion in part III.A., above. Because the legal conclusion on which these FCRA claims depend was rejected, the claims will be dismissed.

D

Grimmer claims Citibank violated subsections of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e and 1692g(b), when it "referred the account to Phillips and Cohen (Exhibit 005) despite having acknowledged a cease and desist from Plaintiff." Compl. ¶ 8. The exhibit to which this allegation refers is an IRS "Form 211 (March 2014)" entitled "Application for Award for Original Information." ECF No. 15-5 at 4–10. Grimmer described the form as "an initial whistleblower submission." *Id.* at 4. In an attachment to the form, Grimmer claimed Citibank had "charged off" his account without issuing a "Form 1099-C to both the IRS and the borrower" (Grimmer) "to avoid paying taxes on the charged-off debt while simultaneously pursuing collection through a third party." *Id.* at 8. It is not clear how Grimmer's submission of this information might

10

support his FDCPA theory; the theory seems to be that Citibank violated the FDCPA by referring Grimmer's account to a collection agency after receiving a "cease and desist" letter from him. Compl. ¶ 8. The theory does not depend on showing any violation of tax statutes or IRS regulations.

Whatever the precise theory, the claim fails because the Complaint does not allege facts plausibly showing Citibank is a debt collector subject to FDCPA liability. "The FDCPA imposes civil liability only on debt collectors, as they are defined by the statute." *Volden v. Innovative Fin. Sys., Inc.*, 440 F.3d 947, 950 (8th Cir. 2006); *see Hartley v. Suburban Radiologic Consultants, Ltd.*, 295 F.R.D. 357, 370 (D. Minn. 2013) ("The FDCPA regulates the activities of, and imposes liability upon, debt collectors, not creditors." (first citing *Heintz v. Jenkins,* 514 U.S. 291, 292–93 (1995); and then citing *Schmitt v. FMA All.*, 398 F.3d 995, 998 (8th Cir. 2005) (per curiam))). The FDCPA defines a debt collector as "[1] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). The Complaint does not address this threshold issue. It does not allege that Citibank's principal business purpose is debt collection. It does not allege that Citibank regularly collects debts owed to an entity other than Citibank. It alleges facts showing only that Citibank is a creditor, but that status does not subject Citibank to FDCPA liability.

11

E

Grimmer claims Citibank violated the Truth in Lending Act "and Regulation Z (15 U.S.C. § 1666d; 12 C.F.R. § 1026.9)." Compl. at 6. The only factual allegation connected to this claim is that Citibank "failed to provide any original signed contract or full accounting ledger," presumably in response to Grimmer's requests. *Id.* ¶ 7. The statute to which this claim refers provides in full:

> Whenever a credit balance in excess of $1 is created in connection with a consumer credit transaction through (1) transmittal of funds to a creditor in excess of the total balance due on an account, (2) rebates of unearned finance charges or insurance premiums, or (3) amounts otherwise owed to or held for the benefit of an obligor, the creditor shall—
>
> **(A)** credit the amount of the credit balance to the consumer's account;
>
> **(B)** refund any part of the amount of the remaining credit balance, upon request of the consumer; and
>
> **(C)** make a good faith effort to refund to the consumer by cash, check, or money order any part of the amount of the credit balance remaining in the account for more than six months, except that no further action is required in any case in which the consumer's current location is not known by the creditor and cannot be traced through the consumer's last known address or telephone number.

15 U.S.C. § 1666d. The regulation to which this claim refers, 12 C.F.R. § 1026.9, is lengthy and generally describes disclosure requirements applicable to certain kinds of creditors. *See Weichsel v. JP Morgan Chase Bank, N.A.*, 65 F.4th 105, 108–09 (3d Cir. 2023) (describing some of these disclosure requirements).

The statute and rule have no discernable connection to the claim's factual basis. The claim is premised on Citibank's failure to provide an "original signed contract or full accounting ledger." Compl. ¶ 7. The statute imposes no duty like that. It describes a creditor's responsibilities regarding a credit balance. *See* 15 U.S.C. § 1666d. Though the regulation concerns creditor disclosure requirements, it nowhere identifies obligations to disclose an "original signed contract, a "full accounting ledger," or anything like these documents. *See* 12 C.F.R. § 1026.9. Because the law cited for this claim lacks any connection to the facts on which the claim is based, the claim will be dismissed.

F

Grimmer's final two claims fail for the same reason, so they will be addressed together. To recap, Grimmer claims Citibank violated the Gramm-Leach-Bliley Act, 12 C.F.R. § 1016, and a tax code provision, 26 U.S.C. § 6050P. Compl. at 6. The factual basis underlying these claims ultimately doesn't matter because neither provision provides a private right of action. As one court has explained: "In 2014, the Bureau of Consumer Financial Protection Bureau amended Regulation P [12 C.F.R. § 1016] through agency rulemaking. The Bureau specifically noted there is no private right of action under Regulation P." *Bonilla v. Am. Heritage Fed. Credit Union*, Civil Action No. 20-2053, 2020 WL 2219141, at *11 (E.D. Pa. May 7, 2020) (first citing Amendment to the Annual Privacy Notice Requirement Under the Gramm-Leach-Bliley Act (Regulation P), 79 Fed. Reg. 64057, 64068 n.65 (Oct. 28, 2014); and then citing *Beavers v. New Penn Fin. LLC*, No. 1:17-cv-00747-JLT, 2017 WL 4547054, at *10 (E.D. Cal. Oct. 12, 2017)); *see Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007) ("No private

13

right of action exists for an alleged violation of the GLBA."); *Harper v. Trans Union, LLC*, Civil Action No. DKC 24-230, 2025 WL 1928021, at *5 (D. Md. July 14, 2025) (same). The same is true of 26 U.S.C. § 6050P. *In re: Manjarrez*, No. 24-11827 (MEW), Adv. Pro. No. 25-01094 (MEW), 2025 WL 2751191, at *2 (Bankr. S.D.N.Y. Sep. 26, 2025) (explaining there is no private right of action for alleged violations of 26 U.S.C. § 6050P); *Hall v. Barclays Bank Del.*, No. 3:24-CV-349-CEA-DCP, 2024 WL 5286466, at *4 (E.D. Tenn. Dec. 17, 2024) (same), *report & recommendation adopted*, 2025 WL 35970 (E.D. Tenn. Jan. 6, 2025).

*

There is a question whether the Complaint should be dismissed with or without prejudice. Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting report and recommendation), or when the record makes clear that any amendment would be futile, *see Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claims "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at

14

*5 (D. Minn. Apr. 18, 2019), *report & recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).

Here, the Complaint will be dismissed with prejudice. Grimmer did not address this issue in his opposition brief. *See generally* ECF No. 20. He defended the original Complaint. He did not request leave to amend. He did not identify what additional allegations or claims he might add through amendment that might cure any of the problems identified in Citibank's motion. In a subsequent filing entitled "Notice of Clarification and Correction of Authorities" (more on this filing in just a bit), Grimmer cited an Eighth Circuit case as additional support for what he described as a "request that, if the Court finds any portion of the Complaint deficient, Plaintiff . . . should be allowed to amend his pleading rather than face dismissal with prejudice." ECF No. 29 at 4. As with his opposition brief, however, Grimmer identified no allegations or claims that might be added to an amended pleading. The opaque character of the Complaint's factual allegations and the lack of fit between the factual allegations and identified legal theories make it difficult to conceive of how the Complaint might be amended to address the Complaint's dismissal-prompting problems. For all these reasons, the dismissal will be with prejudice.

IV

Under the relevant provisions of Rule 11(b), by filing a brief, "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the claims, defenses, and other legal contentions are warranted by existing law." Fed. R. Civ. P.

11(b)(2).  Our Eighth Circuit Court of Appeals has "urge[d] the district courts to assure compliance by pro se litigants with the requirements of Rule 11."  *Ginter v. Southern*, 611 F.2d 1226, 1227 n.1 (8th Cir. 1979) (per curiam).  A reasonable inquiry requires that "the prefiling investigation must uncover a factual basis for the plaintiff's allegations, as well as a legal basis."  *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003).  This is an objective standard that applies to pro se litigants as well as attorneys, though "what is objectively reasonable for a [pro se party] may differ from what is objectively reasonable for an attorney."  *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 550–51 (1991) (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 810 (9th Cir. 1989)); *see Dixon v. Rybak*, No. 06-cv-2579 (PAM/JSM), 2006 WL 2945564, at *2 (D. Minn. Oct. 13, 2006).  In other words, the rule requires litigants to "stop-and-think" before making legal or factual contentions in pleadings.  Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.  "[T]he primary purpose of Rule 11 sanctions is to deter attorney and litigant misconduct, not to compensate the opposing party for all of its costs in defending."  *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018) (quoting *Kirk Cap. Corp. v. Bailey*, 16 F.3d 1485, 1490 (8th Cir. 1994)).  Courts "may consider the wrongdoer's history, experience and ability, the severity of the violation, the degree to which malice or bad faith contributed to the violation, and other factors."  *Pope v. Fed. Express Corp.*, 49 F.3d 1327, 1328 (8th Cir. 1995) (citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990)).  "On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."  Fed. R. Civ. P. 11(c)(3).

In its reply brief, Citibank pointed out that Grimmer's opposition brief includes numerous citations to nonexistent cases. ECF No. 25 at 17. Citibank filed no Rule 11 (or other) sanctions motion; it identified the problem in its reply brief and suggested sanctions would be appropriate. *See id.* at 15–18. In his Notice of Clarification and Correction of Authorities, Grimmer acknowledged that most of these citations "cannot be located in any official reporter or database." ECF No. 29 at 2. In this same document, Grimmer explained the error occurred because he "relied on extensive list-making, web-based research, non-conventional methods, and an AI-based drafting tool to organize legal research," but inadvertently failed to verify some cases before including them in his opposition brief. *Id.* Grimmer also explained that he suffers from "documented cognitive-processing disorders affecting short-term processing [and] memory and retention," implying these conditions contributed to the problem. *Id.* In another filed document entitled "Plaintiff's Statement and Response Regarding Citation Errors," Grimmer apologized for his error and denied any "intention to mislead the Court or opposing counsel." ECF No. 32 at 1.

The question is whether Grimmer should be ordered to show cause why his citation to nonexistent cases did not violate Rule 11(b). *See Safe Choice, LLC v. City of Cleveland*, No. 1:24-cv-02033-PAB, 2025 WL 2958211, at *4 (N.D. Ohio Oct. 17, 2025) ("Put simply, citing hallucinated fake cases is a violation of Rule 11."). There are reasons to think Grimmer does not fully appreciate the seriousness of this issue. For example, in his Notice of Clarification and Correction of Authorities, Grimmer did not acknowledge that four cases cited in his opposition brief (and identified by Citibank) do not exist. These

17

citations are *Hernandez v. Midland Credit Mgmt.*, 79 F.4th 771 (8th Cir. 2023); *Hernandez v. Midwest Transit Servs., Inc.*, 479 F. Supp. 3d 644 (N.D. Ill. 2020); *Leventhal v. MandMarblestone Grp.*, 639 F. App'x 183 (3d Cir. 2016); and *Peters v. U.S. Bank N.A.*, 2020 WL 604884 (D. Minn.). The Court has independently confirmed these citations appeared in Grimmer's opposition brief and the cases do not exist. In this sense, Grimmer's acknowledgment is incomplete, and his decision not to address these citations is baffling. Making things worse, Grimmer used his Notice of Clarification and Correction of Authorities not just to explain and correct his mistakes, but to expand on arguments in his opposition brief—that is, he used the filing as an unpermitted, unsolicited sur-reply. He knew not to do that. In his Statement and Response Regarding Citation Errors, Grimmer included the following statement in bold type: "**This Statement and Response is not a sur-reply and introduces no new legal arguments on the merits. It is submitted solely to clarify the record regarding citation issues raised in Doc. 25.**" ECF No. 32 at 3. Grimmer did not include this statement (or anything like it) in his Notice of Clarification and Correction of Authorities. *See* ECF No. 29.

      Regardless, for three reasons, I conclude the better answer is just to drop the issue. First, Grimmer offered plausible excuses for his citation errors and a seemingly sincere apology, and he described the steps he would take to ensure the errors do not happen again. *See* ECF No. 32. Second, as Grimmer pointed out in a separate letter, "[t]he mistake itself has already harmed [his] credibility and standing before the Court." ECF No. 28 at 2. In other words, based on what happened in this case, in other cases Mr. Grimmer files or is a party his adversaries and the court are on notice. They will no doubt review his briefs

and other filings very carefully with an eye toward ensuring that whatever authorities he cites are genuine. This is not a hypothetical prospect. Grimmer has another case pending in this District that is the subject of several pending motions. *See Grimmer v. Gurstel L. Firm, P.C.*, No. 25-cv-1024 (PJS/EMB). Based on what transpired here, Grimmer has a strong incentive not to repeat the mistake in that case (or any other). It is difficult to hypothesize a sanction that might yield additional deterrence. Fed. R. Civ. P. 11(c)(4). Third, the proceedings necessary to determine whatever additional sanction might be appropriate "to deter repetition of the conduct," *id.*, would entail demands on Citibank and the Court—more briefing, a hearing, perhaps follow-on briefing, and the issuance of an order—that seem quite disproportionate to any possible deterrence benefit. For these reasons, Grimmer will not be ordered to show cause why his conduct did not violate Rule 11(b).

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendant Citibank, N.A.'s Motion to Dismiss [ECF No. 13] is **GRANTED**.

2. The Complaint [ECF No. 1-1] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 7, 2025              s/ Eric C. Tostrud
                                     Eric C. Tostrud
                                     United States District Court